U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2022 JUN 17 PM 4: 01

CLERK

BY _____

DEPUTY CLERK

FRIENDS OF PINE STREET, d/b/a PINE )
STREET COALITION,                    )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )        Case No. 5:19-cv-95
                                     )
THOMAS D. EVERETT, in his capacity as )
Executive Director of the Federal Highway )
Administration; JOE FLYNN, in his    )
capacity as Secretary of the State of )
Vermont Agency of Transportation; and )
MIRO WEINBERGER, in his capacity as  )
Mayor of Burlington,                 )
                                     )
        Defendants.

## ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER
### (Doc. 40, 46)

This case concerns long-running efforts by the City of Burlington and state and federal highway

administrators to complete a road between the I-189 interchange at Shelburne Road (Route 7)

and the Burlington waterfront and downtown area.   The project has a history of some 50 years,

beginning in the mid-1960's with a proposal for a limited access highway carrying cars and

trucks from I-89 directly into downtown Burlington.   The southernmost portion of this highway

was actually constructed, but it was never opened to traffic.   It exists today as a crumbling relic

of a time when highways and automobiles played a dominant role in urban development.

The original design foundered in the 1980's after the Environmental Protection Agency

designated the Pine Street Barge Canal as a Superfund site.   Transportation planning has also

developed since the 1960's and roadways are now seen as community resources, open to

pedestrians and cyclists as well as automobiles.  The current plan for what is now known as the

Champlain Parkway (formerly the Southern Connector) calls for the construction of a road

designed as a modern city street with safety features for cyclists and pedestrians. The court views the roadway in three general stages:

- the southernmost portion that will follow the path of the original Southern Connector, making use of the condemnation of housing in past decades and the open throughfare already in place;

- the middle section running from Home Avenue at the south end to Lakeside Avenue;

- a final section constructed along Pine Street and running at least as far as Maple Street.

It is the middle section that is of immediate concern today. It is bisected by Engelsby Brook, a stream flowing from the ridgeline at the Burlington Country Club through residential neighborhoods, across the path of the proposed roadway, and into Lake Champlain near the western end of Flynn Avenue. This middle section was acquired by the City for purposes of constructing the original Southern Connector some 40 years ago. It forms part of what was the Pine Street industrial area of Burlington in the 19th and early 20th centuries. The factories and mills have closed. Today the area includes commercial buildings, parking lots and a densely wooded corridor along Engelsby Brook.

The development of the current plans for the Champlain Parkway have been in the works for approximately 10 years. The plans have met with opposition from community members and some property owners, residential and commercial, whose property is adjacent to the proposed roadway. The project has undergone considerable scrutiny through the state land use permitting process. *See In re Champlain Parkway Act 250 Permit*, 2015 VT 105 (Aug. 21, 2015); *In re Champlain Parkway Wetland Conditional Use Determination*, 2018 VT 123 (November 9,

2

2018); *Friends of Pine Street v. City of Burlington*, 2020 VT 43 (June 19, 2020); *In re Champlain Parkway SW Discharge Permit*, 2021 VT 34 (May 14, 2021).   The court understands that the defendants now have in place the full complement of permits required by the state environmental review process.

On June 6, 2019, plaintiff filed the complaint in this case seeking review pursuant to the procedures of the National Environmental Policy Act, 42 U.S.C. § § 4332, and the Administrative Procedures Act, 5 U.S.C. § 706.   The second amended complaint seeks review of consideration of the environmental consequences of the Parkway project by the City and its partners. (Doc. 25).  The environmental review process is described in a series of environmental impact statements prepared between 2003 and 2022.   These supplement the original environmental impact statement released in 1979 and reflect the evolution of the project to its current form.

The complaint alleges that the existing environmental impact statements are stale and do not reflect improvements in our understanding of the environmental consequences of the project. It accuses the defendants of failing to take the required "hard look" at the environmental impact of the project and in particular to implement federal law requiring consideration of issues of social justice.   The proposed roadway will bring changes to the intersection of Pine and Maple Streets.   This residential neighborhood is home to a relatively high percentage of Black families and members of other minority groups.   Plaintiff complains that the proponents of the roadway have not considered sufficiently the effect of the project on these city residents.

The complaint also alleges a lack of scrutiny of the impact of constructing two potential roadways in the third stage – the one closest to downtown Burlington.  In plaintiff' view, the defendants have failed to consider the cumulative impact of these two roadways, encircling the

Pine and Maple Street neighborhood from the east and the west. In addition, plaintiff' papers describe concerns about the environmental review of the proposed changes to the treatment of Engelsby Brook. This discussion is only a summary – it is not intended to foreclose other issues raised by plaintiff.

Following the filing of the complaint, the parties filed a stipulated motion seeking remand of the case to allow the state and federal highway administrators "to conduct a further reevaluation of the environmental justice issues, including the impacts caused by changes to the Maple/King neighborhood since issuance of the [supplemental EIS] in 2009, application of current environmental justice regulations and guidance, and new outreach to minority and low-income communities within the project area." (Doc. 5, pp. 3-4). In their original request, the parties sought 90 days to allow further examination of the environmental justice issues. The court granted the motion for a stay. As matters developed, the case did not return to federal court for two and a half years.

In March 2022, the parties filed a motion for entry of a stipulated scheduling order. (Doc. 19). The motion anticipated the filing of a second amended complaint, the potential intervention of Fortieth Burlington, LLC (a commercial property abutter), and the later submission of a proposed scheduling order providing for submission of the administrative record and briefing on a dispositive summary judgment order. The motion contained no hint that commencement of construction was imminent. The court granted the motion. (Doc. 20).

In late April 2022, after reading news accounts indicating that construction was about to commence, the court scheduled a status conference on May 2, 2022. At the conference, plaintiff's counsel indicated that she would file a motion for a preliminary injunction seeking a halt in any construction until resolution of this case. (Doc. 31). Counsel for defendants sought

4

time to brief the preliminary injunction issue. The court expressed concern about avoiding "a kind of bind with the parties about whether you were going to start digging in July or not. Were you planning to wait until this process runs its measured course before starting construction, or are we going to have an issue about that?" (Doc. 31, p. 7). Defense counsel responded that some "preconstruction work" will occur in May and much of June and that "there will be some work starting in late June … that's largely clearing and grubbing and work .. dealing with wastewater, stormwater, perhaps, culverts and things, basically … laying the necessary groundwork for later construction.) (Doc. 31, p. 8). The court and the parties left with the understanding that the defendants' "plan would be to move forward [with construction now] and, if you wind up losing [the NEPA case], just undo it and go back to square one, and, if you win, then you're that much further along?" (Doc. 31, p. 11). With neither side expressing any sense of urgency, the court allowed 60 days for the defendants to respond to the plaintiff's motion for a preliminary injunction that arrived the following day. (Doc. 33).

The parties' positions changed on June 14, 2022, after plaintiff's counsel learned that tree removal and other ground work was scheduled to begin this week. The court issued an ex parte temporary restraining order on June 14, 2022, and scheduled a hearing for June 17, 2022. Both parties appeared for the hearing which took place as planned.

## ANALYSIS

The issue before the court is whether to extend the temporary restraining order until the hearing on the motion for preliminary injunction which is scheduled to take place in early August 2022. Plaintiff has the burden of establishing a likelihood of success on the merits; a likelihood that it will suffer irreparable harm if the TRO is not extended; that the balance of hardships tips in its favor; and that the public interest will not be disserved by the TRO.

5

As a preliminary matter, the court rejects the defendants' argument that the plaintiff is responsible for the emergency request for a TRO.   The defendants took two and a half years following remand to update their environmental assessment.   After returning to court in January 2022, they provided little information about the construction plans.   At a status conference on May 2, 2022, the defendants indicated that some work would commence in late spring but left an impression that there was ample time for the parties and the plaintiff to prepare for a preliminary injunction hearing several months out.   This conference left the court at least with the mistaken impression that matters could wait until the parties returned in August after briefing the preliminary injunction issues.   In fact, the project went out to bid, important deadlines are close to expiring, and the defendants are moving forward in earnest with the middle phase of the project (Home Avenue to Lakeside Avenue.)   The court will not hold it against the plaintiff that the matter has tumbled forward with only days to make a decision about the commencement of construction.

Turning to the criteria for temporary relief, the court focuses on the issue of irreparable harm.  The construction which is planned for the current building season consists of the installation of measures to improve water quality of Engelsby Brook and the removal of trees that have grown up in the last 40 years in the intended path of the roadway.   Neither creates a risk of irreparable harm.   Constructing facilities to improve water quality in an impaired stream is a positive development from anyone's perspective.    If plaintiff prevails and the court requires further environmental review, the improvements to Engelsby Brook cannot fairly be described as an irreparable harm.   If they succeed, they will have environmental value.   There is no evidence that they will degrade the water quality.  And they can always be removed.

6

The removal of trees is a different matter.   Once cut down, a tree is obviously gone for good.   Courts have ruled that the destruction of trees may support a claim of irreparable injury. *See Chappaqua v. United States Dept. of Transportation,* 579 F.Supp.2d 427 (S.D.N.Y. 2008)(imminent felling of trees described as irreplaceable and specimen trees due to their age, beauty, location or species constitutes irreparable harm).  But these trees are of relatively recent vintage.   They have grown up in the 40 years since the City of Burlington acquired the right of way and prepared to construct the Southern Connector.   They are hardy common varieties that have grown as "volunteers."   While they cannot be replaced overnight, they can be replaced if necessary with new plantings.   If the plaintiff prevails in this lawsuit, there will be an opportunity to discuss possible remedies to restore the land to its prior condition.   In the meantime, the loss of some trees in an urban setting which was already cleared once for the purpose of building a road does not constitute an irreparable environmental harm.

The primary harms which plaintiff seeks to prevent relate to the impact of the project on the Maple and Pine neighborhood.   That is the harm that takes pride of place in the original complaint and subsequent filings.  Because the Engelsby Brook construction is a mile or more from the neighborhood and because the work scheduled for this summer will not open the road to traffic, there is time to review the plaintiff's primary concerns despite the commencement of construction in the "middle phase" of the project.

In the absence of irreparable harm, there is no need to rule on the remaining criteria.  The court notes that two of the criteria – balance of hardship and public interest – favor the defendants.   The defendants have described credible financial harm to the city and its residents if the construction around the Engelsby Brook is delayed.   The harm to plaintiff is limited to the loss of the trees – offset by whatever positive advantages may be realized through the reduction

of source pollution in Lake Champlain through the water quality measures.  The public interest is difficult to assess at the outset of the case, but the court notes that the City's elected officials, including the mayor and city council, have supported this project through several election cycles. The reelection of public officials who favor the project provides some indication that the electorate also favors the project.  The court takes no position on the criterion of likelihood of success because it is too early to make any judgment without reviewing the various environmental impact statements and other documents comprising the administrative record.

## CONCLUSION

The court DENIES the motion for a continuing temporary restraining order.   The TRO now in effect is vacated.

Dated at Burlington, in the District of Vermont, this 17th day of June, 2022.

Geoffrey W. Crawford, Chief Judge
United States District Court