# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF VERMONT

| | | |
|---|---|---|
| FRIENDS OF PINE STREET, d/b/a | ) | |
| PINE STREET COALITION, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FORTIETH BURLINGTON, LLC | ) | Case No. 5:19-cv-00095-gwc |
| | ) | |
| *Intervenor* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS D. EVERETT, in his capacity as | ) | |
| Executive Director of the Federal Highway | ) | |
| Administration; JOE FLYNN, in his capacity | ) | |
| as Secretary of the State of Vermont Agency of | ) | |
| Transportation; and MIRO WEINBERGER, in | ) | |
| his capacity as Mayor of Burlington, | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANT MIRO WEINBERGER'S
## ANSWER TO INTERVENOR'S COMPLAINT

Defendant MIRO WEINBERGER, in his official capacity as Mayor of Burlington,

answers Intervenor Fortieth Burlington, LLC's Complaint as follows:

## INTRODUCTION

1.       The allegations in this paragraph purport to describe the nature of this case and

require no response.  To the extent a response is required, denied.

2.       The allegations in this paragraph purport to describe the nature of this case and

require no response.  To the extent a response is required, denied.

3.       Admitted that (a) the Champlain Parkway project (the "Project" or the

"Parkway") is a proposed roadway between Route 7/I-189 and the intersection of Main Street

and Pine Street; (b) the Project involves constructing new roadway, reconstructing and realigning portions of existing roadway, installing a culvert through which a segment of Englesby Brook will flow, and altering signalization on Pine Street; (c) the Parkway is a project of the City that has been coordinated with, and partially funded by, the Vermont Agency of Transportation ("VTrans") and Federal Highway Administration ("FHWA"); (d) planning for the Project can be traced back to the 1960s, and that certain aspects of the Project and the project area have changed since then. Otherwise denied.

4.    Admitted that: (a) "Build Alternative 2," as described in FHWA's Record of Decision, dated January 20, 2022 ("2022 ROD"), is the Selected Alternative for the Project; and (b) further admit that the City, in partnership with the Chittenden County Regional Planning Commission ("CCRPC") and in coordination with VTrans and FHWA, has proposed a project known as the Railyard Enterprise Project ("REP"). Otherwise denied.

5.    Denied.

6.    The City denies the allegation set forth in the first sentence of Paragraph 6. The remainder of this paragraph appears to constitute Intervenor's characterization of Attachment H to the Second Amended Complaint, and thus requires no response. To the extent a response is required, the City (a) avers that Attachment H speaks for itself; (b) further avers that prior to issuing the 2022 ROD, FHWA sufficiently analyzed the appropriate environmental considerations, which are documented in, among other documents, the 2022 ROD, the 2021 Limited Scope Final Supplemental Environmental Impact Statement ("LS FSEIS"), the 2019 Reevaluation, and the 2009 Final Supplemental Environmental Impact Statement ("FSEIS").

7.    Denied

8.    Admitted that the 2021 LS FSEIS was limited in scope and focused on Environmental Justice review. Otherwise denied.

9. Admitted that certain policies and regulations with respect to environmental justice have changed in certain respects from 2009 to date. Otherwise denied.

10. Denied.

11. The allegations in this paragraph purport to describe the nature of Intervenor's claims and require no response. To the extent a response is required, denied.

## JURISDICTION AND VENUE

12. The allegations regarding the nature of the case require no response. The City further avers that it may have jurisdictional defenses to one or more of Intervenor's claims. Otherwise denied.

13. Admitted that the Champlain Parkway is located at least in part in the City of Burlington, and that the City resides in this district. The Defendants lack knowledge or information sufficient to respond to the allegations regarding Intervenor's alleged property and the other defendants' residences.

14. Admitted that the Court generally has the authority to enter declaratory and injunctive relief, but refers the Court to the cited statutes and rules for a complete and accurate statement of the contents thereof. Otherwise denied.

15. Denied.

16. To the extent Plaintiff characterizes the Second Amended Complaint as challenging the 2019 Reevaluation and the 2022 ROD, the City admits that the 2022 ROD is a final agency action within the meaning of the Administrative Procedure Act ("APA"). Otherwise denied.

## PARTIES AND STANDING

17. Admitted.

18.     Admitted, upon information and belief, that Fortieth owns property at 128 Lakeside Avenue in Burlington, that the building on that property is known as the Innovation Center, and that the referenced attachments depict the Innovation Center and its location. Otherwise denied.

19.     The City lacks knowledge or information sufficient to respond to the allegations in paragraph 19.

20.     The City lacks knowledge or information sufficient to respond to the allegation in paragraph 20.

21.     Admitted that the Parkway incorporates a portion of Lakeside Avenue.  Otherwise denied.

22.     Denied.

23.     Denied.

24.     The City lacks knowledge or information sufficient to respond to the allegations set forth in paragraph 24.

25.     The City lacks knowledge or information sufficient to respond to the allegations set forth in paragraph 25.

26.     The City lacks knowledge or information sufficient to respond to the allegations set forth in paragraph 26.

27.     Admitted.

28.     Admitted that Intervenor challenged the issuance of an Act 250 permit for the Project and that Intervenor appealed that challenge to the Vermont Supreme Court, which ruled against Fortieth.  The remainder of the allegations set forth in paragraph 28 constitute Intervenor's characterization of the cited opinions of the Vermont Supreme Court and the Superior Court Environmental Division and therefore require no response.  To the extent that a

response to those allegations is required, the cited decisions of the Vermont Supreme Court and the Superior Court Environmental Division speak for themselves and the City refers to the cited judicial opinions for a complete and accurate statement of their contents. The City denies the allegations to the extent that they mischaracterize or are otherwise inconsistent with the cited judicial opinions.

29.     The City lacks knowledge or information sufficient to respond to the allegation that Intervenor and its tenants would be directly and personally affected should Defendants proceed with the Project without supplemental or revised NEPA review. Otherwise denied.

30.     Denied.

31.     Admitted that the Plaintiff is the original plaintiff in this action, and is a Vermont Low-Profit Limited Liability Company. Otherwise denied.

32.     Admitted that FHWA is the federal agency responsible for evaluating the environmental impacts of the Project in accordance with NEPA and certain other statutes and regulations. Otherwise denied.

33.     Admitted upon information a belief that Joe Flynn is the Secretary of VTrans and that he is named in that official capacity. The City lacks knowledge or information sufficient to respond to the allegation that Secretary Flynn or his subordinates are responsible for deciding whether to "initiate" and "proceed" with the project, as it is not clear what is meant by that allegation. The City also lacks knowledge or information sufficient to respond to the allegation that Secretary Flynn or his subordinates must ensure that VTrans and the Parkway comply with unspecified statutes and regulations. The City further avers that it is the responsibility of VTrans to ensure that certain aspects of the Project comply with federal law and regulations. Otherwise denied.

34.     Admitted that Miro Weinberger is the Mayor and chief executive of the City, that he is named in that official capacity, and that the City is a Vermont municipal corporation. The City lacks knowledge or information sufficient to respond to the allegations that (a) the City is the Project "applicant," as it is unclear what is meant by that allegation; (b) Mayor Weinberger or his subordinates are responsible for deciding whether to "initiate" or "proceed" with the project, as it is not clear what is meant by that allegation; and (c) Mayor Weinberger or his subordinates must ensure that the City and the Parkway company with unspecified statutes and regulations. The City avers that it is the responsibility of the City to ensure that certain aspects of the Project comply with federal law and regulation. Otherwise denied.

## STATUTORY AND REGULATORY BACKGROUND

### The National Environmental Policy Act (NEPA)

35.     The allegations set forth in paragraph 35 constitute Intervenor's characterization of NEPA and require no response. To the extent a response is required, the statute and regulation cited by Intervenor speaks for themselves, and the City refers to the cited statute and regulation and to NEPA for a complete and accurate statement of their contents. The City denies the allegations in paragraph 35 insofar as they are inconsistent with the cited statute, regulation, or NEPA.

36.     Admitted that in some cases, Courts may enjoin project construction upon a finding that NEPA has been violated. The remaining allegations in paragraph 36 constitute Intervenor's characterization of NEPA and do not require a response. To the extent a response is required, the cited regulation speaks for itself, and the City refers to the cited regulation and to NEPA for a complete and accurate statement of their contents. The City denies the allegations in paragraph 36 insofar as they are inconsistent with the cited regulation or NEPA.

37.     Admitted.

6

38.     The allegations in paragraph 38 constitute Intervenor's characterization of NEPA and its implementing regulations and do not require a response.  To the extent a response is required, the cited statutes and regulations speak for themselves, and the City refers to the cited statutes and regulations and NEPA for a complete and accurate statement of their contents.  The City denies the allegations in paragraph 38 insofar as they are inconsistent with the cited statutes and regulations or NEPA.

39.     The allegations in paragraph 39 constitute Intervenor's characterization of NEPA and its requirements and thus require no response.  To the extent a response is required, the regulations cited in this paragraph speak for themselves, and the City refers to the cited regulations and to NEPA for a complete and accurate statement of their contents.  The City denies the allegations in paragraph 39 insofar as they are inconsistent with the cited regulations or NEPA.

40.     The allegations in paragraph 40 constitute Intervenor's characterization of NEPA and its requirements and therefore require no response.  To the extent a response is required, the cited regulation and NEPA speak for themselves, and the City refers to the cited regulation and to NEPA for complete and accurate statement of their contents.  The City denies the allegations in paragraph 40 insofar as they are inconsistent with the cited regulation or NEPA.

41.     The allegations in paragraph 41 constitute Intervenor's characterization of NEPA and its requirements and therefore require no response.  To the extent a response is required, the cited regulations and NEPA speak for themselves, and the City refers to the cited regulations and to NEPA for complete and accurate statement of their contents.  The City denies the allegations in paragraph 41 insofar as they are inconsistent with the cited regulations or NEPA.

42.     The allegations in paragraph 42 constitute Intervenor's characterization of NEPA and its requirements and therefore require no response.  To the extent a response is required, the

cited regulation and NEPA speak for themselves, and the City refers to the cited regulation and to NEPA for complete and accurate statement of their contents. The City denies the allegations in paragraph 42 insofar as they are inconsistent with the cited regulation or NEPA.

43. The allegations in paragraph 43 constitute Intervenor's characterization of NEPA and its requirements and therefore require no response. To the extent a response is required, the cited regulations and NEPA speak for themselves, and the City refers to the cited regulations and to NEPA for complete and accurate statement of their contents. The City denies the allegations in paragraph 43 insofar as they are inconsistent with the cited regulations or NEPA.

44. The allegations in paragraph 44 constitute Intervenor's characterization of NEPA and its requirements and therefore require no response. To the extent a response is required, the cited regulations and NEPA speak for themselves, and the City refers to the cited regulations and to NEPA for complete and accurate statement of their contents. The City denies the allegations in paragraph 44 insofar as they are inconsistent with the cited regulations or NEPA.

45. The allegations in paragraph 45 constitute Intervenor's characterization of certain CEQ guidance and therefore require no response. To the extent a response is required, the cited guidance and NEPA speaks for themselves, and the City refers to the cited guidance and NEPA for a complete and accurate statement of their contents. The City denies the allegations in paragraph 45 insofar as they are inconsistent with the cited materials or NEPA.

46. Admitted that: (a) it took more than two years to complete the 2021 LS FSEIS following the filing of the motion for voluntary remand; (b) the 2021 LS FSEIS review process did not start until ten years after the 2009 FSEIS was issued; and (c) that FHWA and VTrans advised the Court that they anticipated, at the time of filing the motion for remand, that it would take approximately 90 days following the Court's Order of Remand to conduct a reevaluation. The allegations regarding Intervenor's characterization of NEPA, regulations promulgated

thereunder by FHWA, and the Infrastructure Investment and Jobs Act, PL 117-58 Section 11301 do not require a response.  To the extent a response to those allegations is required, those authorities speak for themselves, and the City refers to the cited authorities and to NEPA for a complete and accurate statement of their contents.  The City denies those allegations insofar as they are inconsistent with the cited authorities and NEPA.  Otherwise denied.

47.     The allegations in paragraph 47 constitute Intervenor's characterization of NEPA and its requirements and therefore require no response.  To the extent a response is required, the cited regulations and NEPA speak for themselves, and the City refers to the cited regulations and to NEPA for complete and accurate statement of their contents.  The City denies the allegations in paragraph 47 insofar as they are inconsistent with the cited regulations or NEPA.

**The Administrative Procedure Act (APA): Standard of Review**

48.     The allegations in paragraph 48 constitute Intervenor's characterization of the APA and therefore require no response.  To the extent a response is required, the authorities cited by Intervenor speak for themselves, and the City refers to the cited authorities and the APA for a complete and accurate statement of their contents.  The City denies the allegations in paragraph 48 insofar as they are inconsistent with the cited authorities or the APA.

49.     The allegations in paragraph 49 constitute Intervenor's characterization of the APA and therefore require no response.  To the extent a response is required, the authority cited by Intervenor and the APA speak for themselves, and the City refers to the cited authority and the APA for a complete and accurate statement of their contents.  The City denies the allegations in paragraph 49 insofar as they are inconsistent with the cited authority or the APA.

50.     The allegations in paragraph 50 constitute Intervenor's characterization of the APA and therefore require no response.  To the extent a response is required, the authorities cited

by Intervenor speak for themselves, and the City refers to the cited authorities and the APA for a complete and accurate statement of their contents. The City denies the allegations in paragraph 50 insofar as they are inconsistent with the cited authorities or the APA.

**Endangered Species Act**

51. The allegations in paragraph 51 constitute Intervenor's characterization of the Endangered Species Act ("ESA") and therefore require no response. To the extent a response is required, the authorities cited by Intervenor speak for themselves, and the City refers to the cited authorities and the ESA for a complete and accurate description of their contents. The City denies the allegations in paragraph 51 insofar as they are inconsistent with the cited authorities or the ESA.

<strong>FACTS</strong>

52. Admitted.

53. Admitted that (a) the Champlain Parkway involves the creation of a new roadway between Route 7/I-189 and Lakeside Avenue, as well as improvements to Lakeside Avenue and Pine Street, including but not limited to signalization improvements, and the creation of dead-ends or cul-de-sacs on several small streets near a cross street; and (b) the project involves the improvement of portions of Lakeside Avenue and Pine Street (including, but not limited to, roadway improvements and signalization improvements). Otherwise denied.

54. Admitted.

55. Admitted that (a) a section of the Project described in the 1979 Final Environmental Impact Statement ("1979 FEIS") was constructed, but was never opened to traffic, and that a bicycle path adjacent to that section was not completed but is in use to some extent; (b) the C-1 and C-2 sections were originally designed to be four-lane roadways; (c) the C-

8 section was originally designed to run through an area subsequently designed by the Environmental Protection Agency ("EPA") as a Superfund Site known as the Pine Street Barge Canal; and (d) the designation of the Pine Street Barge Canal as a Superfund Site delayed further construction. Otherwise denied.

56. Admitted that (a) notwithstanding EPA's designation of the Superfund site, VTrans determined that the Project should proceed in order to provide facilities needed to relieve severe traffic congestion in the southern part of the City; (b) in or around 1984, a Draft Environmental Impact Statement ("DSEIS") was prepared that addressed the environmental impacts of constructing a portion of the then-selected alternative through a section of contaminated wetland in or about the Pine Street Barge Canal area; and (c) no FSEIS was issued in or around 1984. Otherwise denied.

57. Admitted that (a) an Environmental Evaluation was prepared by FHWA in 1989; (b) a Final Supplemental Environmental Impact Statement was issued in February 1997 (the "1997 FSEIS"); (c) that the 1997 FSEIS addressed the environmental impacts of constructing an interim routing of traffic around the Superfund site; (d) the 1997 FSEIS contemplated that the interim routing of traffic would be for approximately 5-10 years; (e) the 1997 FSEIS addressed the environmental impacts of a new alignment involving what was referred to as the Battery Street Extension. Otherwise denied.

58. Admitted that the 1997 FSEIS discusses a federally-designated Enterprise Community in an area north of King Street and west of Willard Street that was defined by its pervasive poverty, high unemployment, and general distress. Otherwise denied.

59. Admitted that the block quotation set forth in paragraph 59 accurately quotes a portion of the 1997 FSEIS. Otherwise denied.

60.     Admitted that the block quotation set forth in paragraph 60 accurately quotes a portion of the 1997 FSEIS.  Otherwise denied.

61.     Admitted that (a) the 1997 Record of Decision ("1997 ROD") reflects that "Alternative 1," as described therein, was chosen as the Selected Alternative; and (b) the 1997 ROD states that the construction of Alternative 1, as described therein, would allow the Parkway, as then conceived, "to commence serving its intended function of providing traffic relief in the southwestern quarter of the City of Burlington, until such time as the Superfund site is made suitable for completion of the highway, as originally approved."  Otherwise denied

62.     Admitted that construction did not proceed immediately following the 1997 ROD. Otherwise denied.

63.     Admitted upon information and belief.

64.     Admitted that in March 2002, the City formalized efforts to modify the 1979 Selected Interim Alternative and the 1997 Selected Interim Alternative to, among other things, (i) reduce the roadway from a four-lane roadway to a two-lane roadway, (ii) formally abandon the C-8 Section through the Pine Street Barge Canal Superfund site, and (iii) designate the C-1 Section, C-2 Section, and C-6 Section—as such sections were then defined and designed—as the permanent alignment for the Parkway.  Otherwise denied.

65.     Admitted that, in 2003, the City, VTrans, and FHWA initiated the development of a new Supplemental Environmental Impact Statement that addressed proposed modifications to the Project.  Otherwise denied.

66.     Admitted that, in 2005, VTrans recommended that the City consider an alternative that would consist of the C-1 and C-2 Sections and improvements on Lakeside Avenue and Pine Street.  Otherwise denied.

67.     Admitted that (a) the City, VTrans, and FHWA circulated a DSEIS in 2006; (b) a formal public hearing was held under NEPA around that time and the 2006 public hearing was the last public hearing formally mandated by NEPA aside from the public hearing that was held with respect to the 2021 LS FSEIS. The City lacks knowledge or information sufficient to respond to the allegation that "[m]embers of the Pine Street Coalition attended and commented at this 2006 public hearing." Otherwise denied.

68.     Admitted that the 2009 FSEIS was distributed for public review on or around September 24, 2009, and that in January 2010 the FHWA issued a Record of Decision (the "2010 ROD") in which it identified Build Alternative 2 as the Selected Alternative. Otherwise denied.

69.     Admitted that actual construction of the Parkway did not begin in the eight years following issuance of the 2010 ROD. Otherwise denied.

70.     Admitted that litigation regarding the wetland, stormwater, and Act 250 permits occurred in the years following the 2010 ROD, and that the project was opposed by more than one party after the Pine Street alignment was adopted. The City lacks knowledge or information sufficient to respond to the allegations that "there had not been organized opposition to the project" prior to the adoption of the 2009 FSEIS. Otherwise denied.

71.     Admitted that (a) between 2009 and 2018, the Project underwent a number of design changes, which included changes to sidewalks and railroad crossings; and (b) the City's South End experienced growth between 2009 and 2018. Otherwise denied.

72.     Admitted that (a) in April 2018, the Pine Street Coalition delivered a demand letter packet, which purported to detail statutory, regulatory, and policy changes since the 2009 FSEIS; and (b) materials in the demand letter packet characterized some of those changes as a "sea change." Otherwise denied.

73.     Admitted that the demand letter packet included photographs of what Plaintiff characterized as "changes on the ground."  Otherwise denied.

74.     Admitted that (a) in 2016, an initial scoping study was completed for a project now known as the Railyard Enterprise Project ("REP"); (b) the 2016 scoping study of the REP was undertaken in accordance with the Planning and Environmental Linkages process that was developed as part of FHWA's Every Day Counts initiative; and (c) the Coalition referenced the REP in its demand letter packet.  Otherwise denied.

75.     To the extent the allegations in paragraph 75 are intended to describe the Coalition's demand letter packet of April 2018, admitted that (a) the Coalition contended in its demand letter packet that public comment had not been solicited since 2006; (b) the Coalition contended in its demand letter packet that certain aspects of the Project area had changed significantly since 2006; and (c) the Coalition demanded in its demand letter packet that Defendants undertake a new NEPA review to address the Coalition's contention that agency decision making regarding the Parkway was not properly informed by current information, comments, law, data, and methodologies.  Otherwise denied.

76.     Denied.

77.     Admitted.

78.     Admitted that the 2019 Reevaluation does not expressly reference the Coalition's demand letter packet.  Otherwise denied.

79.     Admitted that FHWA did not—and was not required to—publish the 2019 Reevaluation.  Otherwise denied

80.     Admitted that the Reevaluation referenced certain changes that had occurred since 2009, including Project design changes, regulatory changes, and on-the-ground changes.  The City lacks knowledge or information sufficient to respond to the allegation that the Reevaluation

"makes no mention whatsoever of numerous other statutory, regulatory, policy, data, methodology, and on-the-ground changes." Otherwise denied.

81.     Admitted that: (a) the Reevaluation discusses the traffic impacts of the REP; (b) the Reevaluation discusses the initial scoping study of the REP and how that study provides an assessment of the cumulative impacts of the Parkway and the REP; (c) the Reevaluation states that the scoping study of the REP "provides a cursory analysis of environmental impacts for each alternative proposed [with respect to the REP], but does not include special investigations that would occur within the NEPA process [for the REP]." Otherwise denied.

82.     Admitted that the Plaintiff initiated this action in June 2019. Plaintiff's original complaint speaks for itself, and the City refers to that document for a complete and accurate statement of its contents. Otherwise denied.

83.     Admitted that (a) on August 8, 2019, FHWA moved the Court to permit voluntary remand of administrative actions that form the basis of this matter; (b) the remand was sought to permit further reevaluation of environmental justice considerations; (c) FHWA represented in its motion for remand that it anticipated that it would take approximately 90 days from the date of remand to complete a reevaluation; and (d) FHWA represented in its motion for remand that all parties anticipated that litigation would be necessary following the remand and that the remand was not intended to permit a reexamination of all issues raised in Plaintiff's complaint. Otherwise denied.

84.     Admitted.

85.     Admitted that (a) in 2020, RSG, Inc. completed a supplemental scoping study of the REP for the City and the CCRPC; (b) the supplemental scoping study of the REP was undertaken in accordance with the Planning and Environmental Linkages process that was developed as part of FHWA's Every Day Counts initiative; (c) the supplemental scoping study of

the REP was financed in part with federal funds from FHWA; (d) in or about August 2021, the City prepared a memorandum concerning the City's South End Construction Coordination Plan, and that such memorandum contains a chart that depicts the projected sequencing of a number of construction projects and which shows that REP construction was projected to being in 2025 and that construction of the Parkway was projected to still be underway in 2025; and (e) the City and VTrans entered into a cooperation agreement related to the REP. Otherwise denied.

86. Admitted that: (a) the 2021 LS FSEIS issued on September 1, 2021; (b) the 2022 ROD issued on January 20, 2022; and (c) FHWA informed the Court of the 2022 ROD on February 1, 2022. Otherwise denied.

87. Denied.

## CAUSES OF ACTION

### COUNT I:
### VIOLATION OF NEPA AND IMPLEMENTING REGULATIONS AND POLICIES AND THE APA: CONNECTION ACTIONS, SIMILAR ACTIONS

88. The City re-states and incorporates by reference its responses to paragraphs 1-87 above.

89. Denied.

90. The allegations in paragraph 90 set forth Intervenor's characterization of NEPA and its requirements and therefore require no response. To the extent a response is required, the regulations cited by Intervenors speak for themselves, and the City refers to those regulations and NEPA for a complete and accurate statement of their contents. The City denies the allegations in paragraph 90 to the extent they are inconsistent with the cited regulations or NEPA.

91. Admitted that the REP is planned to intersect with Pine Street at a point where there currently is no intersection. Otherwise denied.

16

92.     Denied.

93.     Admitted that the Main Street Great Streets Project ("MSGSP") is planned to involve improvements to Main Street at its intersection with Pine Street. The City lacks knowledge or information sufficient to respond to the remaining allegations in paragraph 93.

94.     Admitted that (a) the City voted in December 2020 to advance the REP to preliminary engineering; (b) the City and VTrans signed a cooperative agreement related to the REP in May 2021; (c) the City issued a Request for Qualifications for the REP design in the Summer of 2021; and (d) Stantec is managing an REP-related website. Otherwise denied.

95.     Denied.

96.     Denied.

97.     Denied.

98.     Denied.

**COUNT II:**
**VIOLATION OF NEPA AND IMPLEMENTING REGULATIONS AND POLICIES AND THE APA: FAILURE TO CONSIDER CUMULATIVE and INDIRECT IMPACTS**

99.     The City repeats and incorporates by reference its responses to paragraphs 1-98 above.

100.     Denied.

101.     The allegation in paragraph 101 sets forth Intervenor's characterization of the cited regulation and NEPA, and therefore no response is required. To the extent a response is required, the cited regulation speaks for itself, and the City refers to the cited regulation and to NEPA for a complete and accurate statement of their contents. To the extent paragraph 91 mis-quotes the cited regulation or is otherwise inconsistent with the cited regulation or NEPA, the City denies the allegations in paragraph 101.

102.     The allegation in paragraph 102 sets forth Intervenor's characterization of the cited authority and NEPA, and therefore no response is required.  To the extent a response is required, the cited authority speaks for itself, and the City refers to the cited authority and to NEPA for a complete and accurate statement of their contents.  To the extent paragraph 102 mis-quotes the cited authority or is otherwise inconsistent with the cited authority, NEPA, or other binding authorities, the City denies the allegations in paragraph 102.

103.     Admitted that a scoping study of the REP was undertaken by RSG for the CCRPC, and that such study was financed in part through federal funds through FHWA. Otherwise denied.

104.      Admitted that the 2009 FSEIS and the 2021 LS FSEIS include images that depict the Parkway and which do not depict the REP and MSGSP.  Otherwise denied.

105.     Admitted that: (a) the 2009 FSEIS included an evaluation of the environmental impacts of several alternatives, including those alternatives identified therein as Alternative 1, which included a roadway connecting Pine Street and Battery Street, and Alternative 2, which is the selected alternative; (b) the 2009 FSEIS did not include an evaluation of the environmental impacts of an alternative consisting of the C-6 sections of both Alternative 1 and Alternative 2; and (c) the 2009 FSEIS did not include an evaluation of the cumulative impacts of Alternative 2 and the C-6 component of Alternative 1.  Otherwise denied.

106.     Admitted that (a) when the 2009 FSEIS was issued, the NEPA review process for the REP had not yet begun; (b) a scoping study of the REP was conducted in or about 2016, a supplemental scoping study of the REP was conducted in or about 2020, and both of those studies were financed in part with federal funds from FHWA; (c) after researching and evaluating the resource impacts described in the 2019 Reevaluation, it was determined (and stated in the 2019 Reevaluation) that the Project will not result in any attributable cumulative

18

impacts with any of the other past, present, and reasonably foreseeable projects discussed in Section 4.15 of the 2019 Reevaluation; and (d) the 2019 Reevaluation references the 2016 scoping study report.  The City further avers that 2019 Reevaluation and the scoping study report speak for themselves, and refers to those documents for complete and accurate statements of their contents.  Otherwise denied.

107.    Denied.

108.    Admitted that a summarized response to a comment included in the 2021 LS FSEIS states, in part, as follows: "the [REP] is in the preliminary planning phase, is independent of the [Parkway], and is being planned to address a separate purpose and need[;] Construction of the [Parkway] will not preclude a future project if the [REP] eventually proceeds to construction, and the combined impacts of the two projects may be assessed as that project progresses."  The City avers, however, that the allegations in paragraph 108 are taken out of context and mischaracterize the 2021 LS FSEIS, and refers to the 2021 LS FSEIS and Appendix 7 of the 2021 LS FSEIS for a complete and accurate statement of their contents.  Otherwise denied.

109.    Denied.

110.    Admitted that the project has undergone design changes since 2009, including changes with respect to construction access and rail crossings.  Otherwise denied.

111.    Denied.

112.    Denied.

## COUNT III:
## VIOLATION OF NEPA AND ITS IMPLEMENTING REGULATIONS AND POLICIES, AND THE APA: FAILURE TO PREPARE SUPPLEMENTAL EIS IN LIGHT OF MYRIAD CHANGES, NEW INFORMATION and NEW CIRCUMSTANCES

113.    The City restates and incorporates by reference its responses to paragraphs 1 through 112 above.

114.     The allegations in paragraph 114 set forth Intervenor's characterization of Attachment H and therefore require no response.  To the extent a response is required, the City avers that, in issuing the 2022 ROD, FHWA sufficiently considered appropriate environmental considerations, as documented in the 2022 ROD, 2021 LS FSEIS, 2019 Reevaluation, and 2009 FSEIS, among other documents.  Attachment H speaks for itself, and the City refers to that document and the foregoing environmental documents for a complete and accurate statement of their contents

115.     Admitted that the 2019 Reevaluation includes an analysis of traffic operations, and that such analysis includes a comparison of traffic-volume data presented in the 2009 FSEIS with updated traffic-volume data pertaining to a number of Parkway locations.  Otherwise denied.

116.     Admitted that (a) the 2009 FSEIS assessed impacts to traffic operations based on, inter alia, traffic forecasts that corresponded to an estimated time of construction ("ETC") of 2008 and a twenty-year-post-construction date of 2028; and (b) the 2019 Reevaluation reflects the determination that the traffic data and forecasts utilized when preparing the 2009 FSEIS remained relevant and valid in 2019.  Otherwise denied.

117.     Admitted that: (a) as a result of development that has occurred on Lakeside Avenue since the completion of the 2009 FSEIS, traffic volume on Lakeside Avenue has increased since the completion of the 2009 FSEIS; and (b) material included in Appendix 2A to the 2021 LS FSEIS states that traffic data was collected on numerous occasions and that, in each instance, "traffic counts confirmed that the existing volumes were consistent with the anticipated growth (such as in the areas of Pine Street and Lakeside Avenue where redevelopment has occurred), but that the projected future design volumes were still conservatively higher."  Otherwise denied.

118.    Denied.

119.    Denied.

## COUNT IV:
## VIOLATION OF NEPA AND IMPLEMENTING REGULATIONS AND POLICIES AND THE APA: FAILURE TO CONSIDER REASONABLE ALTERNATIVES and the NO-ACTION ALTERNATIVE

120.    The City restates and incorporates by reference its responses to paragraphs 1 through 119 above.

121.    The allegations in paragraph 121 set forth Intervenor's characterization of NEPA and therefore require no response. To the extent a response is required, NEPA and it implementing regulations speak for themselves, and the City refers to NEPA and its implementing regulations for a complete and accurate statement of their contents. To the extent the allegations in paragraph 121 are inconsistent with NEPA and its implementing regulations, the City denies those allegations

122.    The allegation in paragraph 122 sets forth Intervenor's characterization of NEPA and therefore require no response. To the extent a response is required, NEPA and it implementing regulations speak for themselves, and the City refers to NEPA and its implementing regulations for a complete and accurate statement of their contents. To the extent the allegations in paragraph 122 are inconsistent with NEPA and its implementing regulations, the City denies those allegations.

123.    Denied.

124.    Denied.

125.    Denied.

## COUNT V:
## VIOLATION OF NEPA AND ITS IMPLEMENTING REGULATIONS AND POLICIES, AND THE APA: FAILURE TO TAKE A "HARD LOOK"

126.     The City restates and incorporates by reference its responses to paragraphs 1 through 125 above.

127.     The allegations in paragraph 127 set forth Intervenor's characterization of NEPA and therefore require no response.  To the extent a response is required, NEPA and it implementing regulations speak for themselves, and the City refers to NEPA and its implementing regulations for a complete and accurate statement of their contents.  To the extent the allegations in paragraph 127 are inconsistent with NEPA and its implementing regulations, the City denies those allegations.

128.     Denied.

129.     Denied.

130.     Denied.

## COUNT VI:
## VIOLATION OF NEPA AND IMPLEMENTING REGULATIONS AND POLICIES AND THE APA: FAILURE TO TAKE A MAKE A REASONED DECISION

131.     The City restates and incorporates by reference its responses to paragraphs 1 through 130 above.

132.     Denied.

133.     Denied.

134.     Denied.

135.     Denied.

## COUNT VII:
## VIOLATION OF NEPA AND IMPLEMENTING REGULATIONS AND POLICIES AND THE APA: FAILURE TO ENGAGE IN ENVIRONMENTAL JUSTICE REQUIRED ACTIONS

136.     The City restates and incorporates by reference its responses to paragraphs 1 through 135 above.

137.    Admitted that: (a) since 2009, certain laws and policies related to environmental justice have changed, including changes to laws and policies that affect the actions of FHWA and the United States Department of Transportation ("USDOT") and (b) FHWA is organized within USDOT.  The City otherwise lacks knowledge or information sufficient to respond to the remaining allegations in paragraph 137, as it is not clear what is meant by the phrase "high-level cross agency changes."

138.    Admitted that: (a) USDOT Environmental Justice Order 5610.2(a) was published in May 2012, and (b) it includes the quoted language.  Otherwise denied.

139.    The allegations in paragraph 139 set forth Intervenor's characterization of unspecified USDOT guidance material and therefore do not require a response.  To the extent a response is required, the City lacks knowledge or information sufficient to respond further to the allegations in this paragraph, which refer to unspecified "USDOT Order guidance documents."

140.    The allegations set forth in paragraph 140 constitute Intervenor's characterization of an FHWA Environmental Justice Reference Guide and therefore require no response.  To the extent a response is required, the FHWA Environmental Justice Reference Guide speaks for itself, and the City refers to the FHWA Environmental Justice Reference Guide for a complete and accurate statement of its contents.  To the extent the allegations in paragraph 140 mischaracterize or are otherwise inconsistent with the FHWA Environmental Justice Reference Guide, the City denies those allegations.

141.    The allegations set forth in paragraph 141 constitute Intervenor's characterization of an FHWA Environmental Justice Reference Guide and therefore require no response.  To the extent a response is required, the FHWA Environmental Justice Reference Guide speaks for itself, and the City refers to the FHWA Environmental Justice Reference Guide for a complete and accurate statement of its contents.  To the extent the allegations in paragraph 141

mischaracterize or are otherwise inconsistent with the FHWA Environmental Justice Reference Guide, the City denies those allegations.

142.     The allegations set forth in paragraph 142 constitute Intervenor's characterization of an FHWA Environmental Justice Reference Guide and therefore require no response. To the extent a response is required, the FHWA Environmental Justice Reference Guide speaks for itself, and the City refers to the FHWA Environmental Justice Reference Guide for a complete and accurate statement of its contents. To the extent the allegations in paragraph 142 mischaracterize or are otherwise inconsistent with the FHWA Environmental Justice Reference Guide, the City denies those allegations.

143.     Admitted that the FHWA Environmental Justice Reference Guide, dated April 1, 2015, includes a discussion of authorities that require public outreach under certain circumstances related to environmental justice, but avers that the FHWA Environmental Justice Reference Guide, dated April 1, 2015, does not establish any new requirements or mandates. Otherwise denied.

144.     Admitted that FHWA is organized within USDOT, and that the federal government, FHWA, and USDOT have issued (a) an Environmental Justice Strategy dated November 15, 2016, (b) a March 29, 2021 Equity and Access Policy Statement, (c) Executive Order 13985, (d) DOT 5610.2C, and (e) DOT 1000.12C. Those materials speak for themselves, and the City refers to those materials for a complete and accurate statement of their contents. To the extent the allegations in paragraph 144 mischaracterize or are otherwise inconsistent with the cited materials, the City denies those allegations.

145.     Admitted that: (a) FHWA sought and obtained an order approving a voluntary remand of this matter to conduct a further evaluation of environmental justice considerations in 2019, and (2) issued the 2021 LS FSEIS and a ROD. Otherwise denied.

146.     The City lacks knowledge or information sufficient to respond to the allegation that the "Maple King neighborhood . . . has the highest Black and Brown resident population in the State of Vermont."  Otherwise denied.

147.     Denied.

148.     Denied.

**COUNT VIII:**
**VIOLATION OF NEPA AND IMPLEMENTING REGULATIONS AND POLICIES AND THE APA: FAILURE MAKE A REASONED DECISION, TAKE A HARD LOOK, and MEANINGFULLY RESPOND TO COMMENTS RELATIVE TO ENVIRONMENTAL JUSTICE DETERMINATIONS IN 2021 LS FSEIS**

149.     The City restates and incorporates by reference its responses to paragraphs 1 through 148 above.

150.     Denied.

151.     To the extent the allegations in paragraph 151 constitute Intervenor's characterization of the FHWA Environmental Justice Reference Guide and a VTrans publication, those allegations require no response.  To the extent a response to those allegations is required, those materials speak for themselves, and the City refers to those materials for a complete and accurate statement of their contents.  The City denies those allegations to the extent they mischaracterize or are otherwise inconsistent with the cited materials.  The City denies all other allegations in paragraph 151.

152.     Denied.

153.     Admitted that (a) upon information and belief, that in March 2018, Governor Phil Scott designated 25 census tracts across Vermont as "Opportunity Zones" for purposes of the Tax Cuts and Jobs Act of 2017; and (b) upon information and belief, one of the 25 census tracts that Governor Scott designated as an Opportunity Zone included a portion of the Project area.

The City lacks knowledge or information sufficient to respond to the remaining allegations in paragraph 153, which, *inter alia*, refer to unspecified "City and State definitions."

154.    Admitted that Census Tract 10, Census Tract 9 Block Groups 2 and 3, and Census Tract 8 Block Group 1 were not identified in the LS FSEIS as "low-income" communities.  The City cannot discern what is meant by the phrase "[b]y City and State definitions," and therefore lacks knowledge or information sufficient to respond to the remaining allegations in paragraph 154.

155.    Denied.

156.    Admitted that: (a) the block quote set forth in paragraph 156 accurately quotes from the Limited Scope Draft Supplemental Environmental Impact Statement ("LS DSEIS") issued in 2020; and (b) during the SL DSEIS review of the Selected Alternative, minority populations were identified adjacent to Pine Street between Kilburn Street and Flynn Avenue.  The City avers, however, that it was determined that the Project would result in minimal impacts to the minority populations that were identified adjacent to Pine Street between Kilburn Street and Flynn Avenue.  Otherwise denied.

157.    Admitted that the minority population in Census Tract 10 is greater than the citywide average minority population for the City.  Otherwise denied

158.    Denied.

159.    Admitted that: (a) the LS FSEIS discusses how, despite increased traffic volume, the installation of traffic signals will result in smoother traffic flow, decreased delay, and vehicles that will move more freely through the neighborhood; and (b) the LS FSEIS does not mention that the installation of traffic signals will result in faster traffic.  Otherwise denied.

160.    Admitted that: (a) the LS FSEIS does not "directly state that improving traffic 'efficiency' in the Maple-King Neighborhood means increasing traffic speed" and (b) in

response to public comments suggesting that increased traffic volume would result in higher traffic speed, it was stated in the 2021 LS FSEIS that traffic speed will not increase as a result of higher traffic volume. Otherwise denied.

161.    Admitted that the Defendants did not capture live traffic-speed data in the Maple and King Street Neighborhood for purposes of analyzing traffic-related impacts of the Project. Otherwise denied.

162.    Admitted that the LS FSEIS states that the reduction of stop-and-go traffic and reduction of the time spent idling at intersection are expected to have a corresponding reduction in traffic noise. Otherwise denied.

163.    Admitted that the FHWA Traffic Noise Model is capable of differentiating between stop-and-go and free-flowing traffic in some circumstances. The City avers that the Defendants did not conclude that faster-traveling vehicles will result in less traffic noise than the status quo in the Maple and King Street Neighborhood, and further, that a model was used to assess traffic noise and that the same is documented in the record. Otherwise denied.

164.    Denied.

165.    Admitted that the 2021 LS FSEIS does not include an analysis of the cumulative noise impacts of the Parkway and the REP on the Maple and King Street neighborhood. Otherwise denied.

166.    Admitted that: (a) the 2021 LS FSEIS concludes that certain aspects of the project "will improve safety for all users"; and (b) the 2021 LS FSEIS does not discuss traffic-safety impacts in terms of the specific degree to which the rate or severity of traffic-related accidents will change. Otherwise denied.

167.    Admitted that the 2021 LS FSEIS does not include an analysis of the cumulative safety impacts of the Parkway and the REP on the Maple and King Street Neighborhood. Otherwise denied.

168.    Admitted that the responses to public comments in the 2021 LS FSEIS includes the quoted language.  Otherwise denied.

169.    Admitted that the 2021 LS FSEIS does not include an analysis of the cumulative impacts of the Parkway and the REP on the community character of the Maple and King Street Neighborhood.  Otherwise denied.

170.    Denied.

171.    Denied.

172.    Denied.

173.    Denied.

174.    Admitted that the traffic operations analysis that is included in the 2021 LS FSEIS relies on the analyses presented in the 2009 FSEIS and the 2019 Reevaluation.  Otherwise denied.

175.    Admitted that (a) the traffic operations analyses are based in part on data that collected between 1998 and 2003; and (b) additional traffic data were collected at select locations between the years 2009 and 2016.  Otherwise denied.

176.    Denied.

177.    Denied.

178.    Denied.

**COUNT IX:**
**VIOLATION OF NEPA AND IMPLEMENTING REGULATIONS AND POLICIES, the ENDANGERED SPECIES ACT, AND THE APA: FAILURE TO CONSIDER AND AVOID IMPACTS TO ENDANGERED AND THREATENED SPECIES**

179.     The City restates and incorporates by reference its responses to paragraphs 1 through 178 above.

180.     The allegations in paragraph 180 constitute Intervenor's characterization of the ESA and therefore require no response. To the extent a response is required, the statutes cited by Intervenor speak for themselves, and the City refers to the cited statutes and to the ESA and its implementing regulations for a complete and accurate statement of their contents. To the extent the allegations in paragraph 180 mischaracterize or are otherwise inconsistent with the cited statutes or the ESA or its implementing regulations, the City denies those allegations.

181.     The allegations in paragraph 181 constitute Intervenor's characterization of a Congressional statement regarding the ESA and therefore require not response. To the extent a response is required, the material cited by Intervenor speaks for itself, and the City refers to the cited material for a complete and accurate statement of its contents. To the extent the allegations in paragraph 181 mischaracterize or are otherwise inconsistent with the cited material, the ESA, or its implementing regulations, the City denies those allegations.

182.     The allegations in paragraph 182 constitute Intervenor's characterization of the ESA and therefore require no response. To the extent a response is required, the statutes and regulation cited by Intervenor speak for themselves, and the City refers to the cited statutes and regulation and to the ESA and its implementing regulations for a complete and accurate statement of their contents. To the extent the allegations in paragraph 182 mischaracterize or are otherwise inconsistent with the cited statutes or the ESA or its implementing regulations, the City denies those allegations.

183.     The allegations in paragraph 183 constitute Intervenor's characterization of the ESA and therefore require no response. To the extent a response is required, the statutes and regulation cited by Intervenor speak for themselves, and the City refers to the cited statutes and

regulation and to the ESA and its implementing regulations for a complete and accurate statement of their contents. To the extent the allegations in paragraph 183 mischaracterize or are otherwise inconsistent with the cited statutes or the ESA or its implementing regulations, the City denies those allegations.

184. Admitted that: (a) the 2019 Reevaluation acknowledged that certain areas of the Project corridor were considered to be potential summer habitat for the northern long-eared bat ("NLEB"), which is federally designated as a threatened species and designated by the State of Vermont as an endangered species; (b) two species of fish that appear on the "Rare and Uncommon Animals of Vermont" list were identified as existing at the mouth of Englesby Brook, and one species of fish that appears on the "Rare and Uncommon Animals of Vermont" list was found to exist in Potash Brook; and (c) sixteen plan species that appear on the "Rare and Uncommon Native Vascular Plants of Vermont" list were identified as existing in the Project area. Otherwise denied.

185. Admitted.

186. Admitted that the cited Regulatory Review Guidance Document provides that acoustic monitoring for NLEB must generally be conducted between June 1 and July 31. Otherwise denied.

187. Admitted that, prior to advancing the Project to bid and construction, an acoustic survey for NLEB was performed in the Project area. Otherwise denied.

188. Admitted that: (a) ANR has, since 2010, listed as threatened or endangered 12 plant species and 13 animal species that are not identified in the 2019 Reevaluation; and (b) the Project has not been reassessed for the presence of those species that ANR has listed as threatened or endangered after the 2022 ROD issued. Otherwise denied.

189. Denied.

190.     Denied.

191.     Denied.

## REQUEST FOR RELIEF

To the extent a response is required, this entire section is denied.  Intervenors are not entitled to any relief.

## AFFIRMATIVE DEFENSES

1.   The Complaint, either in whole or in part, fails state a claim upon which relief may be granted under the ESA.

2.   Intervenor has failed to exhaust its administrative remedies.

3.   Intervenor has failed to establish that it has standing to pursue its claims.

4.   The Court lacks jurisdiction over Intervenor's ESA claim.

5.   One or more of Intervenor's claims are non-justiciable or otherwise unripe.

6.   Defendant reserves the right to add additional affirmative defenses.

Dated at Burlington, Vermont this 15th day of August 2022.

DUNKIEL SAUNDERS ELLIOTT
RAUBVOGEL & HAND, PLLC


By: _____*/s/ Jonathan Rose*_____
    Jonathan T. Rose
    Brian S. Dunkiel
    Paul Quackenbush
    91 College Street
    P.O. Box 545
    Burlington, VT 05402-0545
    (802)860-1003
    bdunkiel@dunkielsaunders.com
    jrose@dunkielsaunders.com
    pquackenbush@dunkielsaunders.com

    *Attorneys for Defendant Miro Weinberger in his Capacity as Mayor of the City of Burlington*